And with that, I'll call the first case, Liberty Global v. United States, Case No. 23-14-10. Good morning, Your Honors. May it please the Court, Shai Voretsky for LGI. LGI is entitled to a deduction for the sale of TGH by operation of Sections 245A, 964E, and 1248J. The regulations can't override that result because Treasury can't rewrite the statute. And I'd like to make four points about why the economic substance doctrine can't do so either. Those four points provide a narrow road map for resolving this case. First, the sale reflected the real appreciation and economic value of Telenet Group's intelligent telecommunications business. Indeed, that's exactly what the IRS wants to tax. Second, that real economic value, real gain... Could you put that microphone right in front of your face? Thank you. That real economic value, real gain, distinguishes this case from every other decision that has applied the economic substance doctrine to disregard transactions. No decision has applied the doctrine to disregard real gain. That's because the doctrine isn't relevant when the taxpayer's economic position is what the taxpayer claims and what a code provision requires. Third, a taxpayer can choose when and how to recognize real gain for tax-motivated reasons. That's why, for example, there would be no problem with selling stock now and buying it back to avoid paying tax in the future at possibly higher rates. Simply put, the economic substance doctrine isn't relevant to tax-motivated choices that the code allows to be tax-motivated, like how to classify or capitalize an entity that a taxpayer uses to recognize real gain. Finally, applying those principles here makes clear that the economic substance doctrine isn't relevant and the IRS can't use it to disregard LGI's 245 Cap A deduction. The government, again, doesn't dispute that the deduction reflects real gain and that's what it wants to tax. LGI chose to recognize that gain by converting Telenet Group into a regarded Belgian corporation and issuing non-qualified preferred stock and debt and then selling TGH. The tax code permits all of those choices for tax reasons to recognize real gain and the tax code dictated their consequences, a 245 Cap A deduction. The economic substance doctrine can't unwind those choices or override how the court treats them. I understand, I think, your four points, but I guess I'd like you to kind of get down to what I think the real issue is here, which is the statutory interpretation of the codified economic substance doctrine. And as I understand it, you concede essentially the two prongs of the statute, which is that the transactions change in a meaningful way, the taxpayers, whether it changes in a meaningful way, your economic position, and whether it has a substantial purpose for entering into, whether you had a substantial purpose for entering into the transaction. And as I understand it, the only thing you're really disputing about the application of Section O is what the meaning of the word relevance is. Is that right? That's not quite right, Judge Moritz. We do concede the second prong of the economic substance test, that if the economic substance doctrine applies, that the purpose here was tax motivated. You don't concede the first prong? We don't concede that there is no economic substance here. What is the economic substance? Well, this was a transaction that, again, recognized real gain, and what it did was it got Telenet Group, a Belgian telecommunications company, out from under the U.S. company. That transaction reflects real gain and has real substance. On the relevance inquiry, there is, as a matter of statutory language, a threshold relevance inquiry. 7701 says, in the case of any transaction to which the economic substance doctrine is relevant, and looking at both pre- and post-7701 case law, there is no case that has used the economic substance doctrine to disregard real gain. That's because what the economic substance doctrine is doing is it is helping the court determine whether the taxpayer actually has what it claims that it has. As I understand it, underlying your position is a plain meaning of the text of 945, correct, or 245? 245, Chapter 8. Right. Isn't that underlying your claim, the plain language of the text of 245A? Yes, the operation of the code, 245A, along with the economy. Then let me direct your attention to subsection 5 of the economic substance rule, and specifically 5B, and it talks about application, which to me means relevance, and it states when it is not relevant. Doesn't that suggest by the plain meaning that that's when it does not apply? Otherwise, it applies. Applying plain meaning to the text of that statute. Judge Murphy, let me just clarify. Are you asking about 5B or are you asking about 5C? I'm talking about 5B, exception for personal transactions of individuals. What it says is that's the case when it's irrelevant, because it was not entered into by a trade or a business. So, Judge Murphy, 5B does make the economic substance doctrine categorically inapplicable to personal transactions, but 5C also explains that the determination of whether the economic substance doctrine is relevant to a transaction shall be made in the same manner as if this subsection had never been enacted. And so that's directing the court to look at pre- How do you explain B that expressly states when it is irrelevant? And that it's relevant when the entity is not an individual, but instead a trade or a business. Again, I think the plain language of 5C, 5B is one category. You want to ignore. I can read 5C. I've looked at it. You're ignoring 5B, and that's my question. So I'm not ignoring 5B. 5B is creating one categorical exclusion, but 5C has a separate inquiry that explains, referring back to O1, what the relevance inquiry is. And the relevance inquiry looks to pre-77010 case law to see which sorts of cases the economic substance doctrine applied to. And again, looking both pre- and post-77010, there is no case that applied the economic substance doctrine where you had a real gain. The cases that apply the economic substance doctrine are ones where the taxpayer didn't have what it claimed to have. So in this court's cases, like Sala or Keeler or Borer, the taxpayer claimed a loss, but in economic reality, it didn't have one because they were actually offsetting options there. In cases like Gregory, where the Supreme Court looked at a reorganization, the taxpayer claimed to have a reorganization, but it didn't really because the statutory language there called for an inquiry into the purpose of the transaction, which the taxpayer didn't satisfy. Cases involving indebtedness or interest payments, where something was called a loan, but in actuality it wasn't. To use the language of the Sixth Circuit from Summa Holdings, the question is whether a transaction's dollars and cents reality matches the label that the taxpayer has put on it. And here, again, that's satisfied because there was real gain in the Belgian telecommunications business. Did any of those cases that you're referring to, including Summa, consider whether there's a threshold determination of relevance, and if so, what that threshold determination is? That was not an issue in any of those cases, correct? So they didn't because almost all of the cases that I mentioned were pre-77010 cases. 77010 is what has the relevance. It's what has the relevance. What about Summa? Wasn't that a totally different doctrine altogether? It certainly didn't consider the economic substance doctrine. So that was a substance over form case rather than an economic substance case.  It's not totally different. They're related doctrines. This court in Rogers said that substance over form, economic substance, these are all related concepts. Summa relied on economic substance doctrine cases in its analysis of the substance over form doctrine. And the key point that comes out of Summa, again, Summa says you look at whether the dollars and cents reality matches the label. If it does, if the taxpayer has what it claims to have, the IRS and a court can't override the operation of the tax code. And that's what's happening here. LGI has what it claims to have. It has a real gain. It recognized that by making capitalization choices and election choices. It's allowed to make those for tax purposes under the code. And under 245 Cap A and the related provisions, the consequence of that is this deduction that LGI has claimed. Now the government obviously doesn't like that result. It's seeking to override it. It sought to do that first through regulations and now through the economic substance doctrine. But what the economic substance doctrine doesn't allow you to do is to change the operation of the tax code where the taxpayer has the right inputs that go into the code. Counsel, can I just get you to address the statutory language again?  How do you think the statutory language should be interpreted? Can I just get you to focus on that? Of course. So under 77010, there is a threshold relevance inquiry. We get that from the introductory language of that provision. In the case of any transaction to which the economic substance doctrine is relevant. So the economic substance doctrine is not relevant to every transaction. It's only relevant to some. Give us an example of when it's not relevant. When it is relevant, excuse me. So I mentioned the cases earlier from this circuit. Give me a hypothetical. Give us some direction of when it's relevant. I mean, it is part of the code. So it's relevant in a case like, in cases like Sala or Borer or Keeler, where a taxpayer claimed a loss, but it actually didn't have a loss because it had offsetting options, calls and puts. And so economically, the taxpayer's position was that the calls and puts offset one another's economic value. But the taxpayer, nonetheless, claimed a loss, even though it had the offset. Isn't that just the same? Here you have earnings and profits. And isn't that the same thing? Is it you're trying to avoid a gain by offsetting them with the earnings and profits under 245? It's not the same thing because you actually have the real gain that triggers the earnings and profits. The offsetting deduction is simply something that's by operation of the tax code. In cases like Sala and Keeler and Borer, the taxpayer actually had two economic things that offset one another. Here that's not what you have. Here you have real gain. And the offsetting deduction arises only by operation of the code. That's why in Borer, for example, the taxpayers engaged in straddle trades of futures and options. The transactions were structured and the court said, quote, so the investor could realize and deduct an ordinary loss in year one and could then recoup the loss in year two with the income tax, the lower long-term capital gain trade. If you had the privilege of writing this decision and the decision favored your position, how would you write it to state a rule, a standard, to determine relevance? So the relevance inquiry requires the court to look at cases in which the rule didn't apply pre-7701. The economic substance doctrine has never been understood to apply to a case where the taxpayer has real gain. I'm asking you, tell me how you would articulate the rule on when a transaction, when the economic substance rule is relevant and when it's irrelevant. It is not relevant when the taxpayer has real gain. It is relevant for determining, it is relevant when the taxpayer doesn't have what it claims to have. I'm happy to continue answering the question. What you're saying is that this applies only when you're talking about losses, not when you're talking about gains. Is that your rule? No, the rule is that it applies when the taxpayer doesn't have what it claims to have. So if the taxpayer claims a loss or claims a gain, but economically it doesn't really have one, then the economic substance doctrine would apply. And you're saying there were real earnings and profits here? Yes, there was real gain that was reflected in the earnings and profits. I don't know if the court will allow me any time for rebuttal. No, we will not. Sorry. I apologize. Your time is up, counsel. Thank you.   Good morning. May it please the court. Judith Hagley from the Department of Justice representing the United States. We are here today because Liberty Global is asking this court to change economic substance cases. Would you move the microphone down? I'm sorry. How economic substance cases are analyzed. First, Liberty Global has conceded that the steps that it took to inflate its 245A deduction by more than $2 billion lacks economic substance and business purpose. Both prongs the economic substance test in this case. And for almost 100 years, courts have disregarded such transactions for tax purposes even when they comply with the literal terms of the code because tax law is generally designed for economically meaningful transactions. Counselor, can I just stop you there? Sure. So was there no real gain here? And can you discuss that argument? Sure. So TGH, Belgian SEB, owns Telenet Group, separate SEB. Telenet Group has appreciated assets. Those assets reflect real built-in gain. The steps that Liberty Global took to trigger recognition of that gain lacked any economic substance. So you reject their argument that if there is real gain, the doctrine doesn't apply? That's correct. We dispute that it's real gain from business earnings that's here. But even if it were, that doesn't mean the economic substance doctrine doesn't apply. Neither 7701 nor the case law exempt transactions with real gain from the economic substance doctrine. Transactions involving real gain have been disregarded under the economic substance doctrine. Gregory itself involved a corporation that held an appreciated asset, and the taxpayer created a reorganization to transfer that appreciated asset so that the taxpayer could trigger the real gain as a capital gain rather than an ordinary dividend. And because the reorganization lacked any economic substance, it was disregarded. I assume that this argument, of course, wasn't made in the Gregory self-case.  Yes, the taxpayer didn't make that type of a relevance argument in that case. The gains in the straddle trade in this court's Keillor decision, those were real gains. Real gains and real economic losses were disregarded there because the taxpayer had relied on the artificial device of triggering economic losses in one year, economic gains in a separate year, and then together it had provided no economic benefit. What was the second case you mentioned? I'm sorry. What was that case? Keillor. Keillor, the straddle trade. And we see real gain that was triggered in the Tucker case. That was the relatively recent tax court case affirmed by the Fifth Circuit there. A CFC sold some sort of euro options for $51 million in gain and then elected to change from being a corporation to a partnership to avoid paying tax on that gain. But again, that was real gain that was disregarded. It was one of four steps that together lacked any economic substance. Now, the district court in this case correctly followed Section 77015C and determined the relevance of the economic substance doctrine, as courts have been doing for decades. Do you agree with the district court's rationale as to how it got there? How it got there? Didn't the district court basically say that the test itself was co-existent with the economic substance test, the doctrinal test was co-existent with the term relevance, which would make one or the other superfluous? I think there is a great deal of overlap, but I do think that with the term relevance there are situations where Congress has said that the economic substance doctrine is not relevant. But that's part of looking at the facts and circumstances in every single case. Suma Holdings and Venison are an example where Congress said we're providing a tax benefit for economically meaningless transactions, and in that circumstance the economic substance doctrine is not relevant, which is why it was not invoked in those cases. There are other rare instances like that. Congress provided benefits for Alaska Native corporations. That was the situation discussed in the Federal Circuit Doyen case and said even in economically meaningless transactions, we want these corporations to get this benefit. Similar situation, the D.C. Circuit's decision Horn, where Congress provided benefits for commodities dealers in economically empty transactions. In short, the way to summarize the relevance question is whenever a taxpayer claims a tax benefit from a transaction lacking economic substance, it is relevant unless Congress has provided that it wants to provide tax benefits for economically meaningless transactions. Well, aren't you, and I think the district court recognized this, aren't you suggesting it always applies? I mean, you're defining where it doesn't in such an extremely narrow, it just would never apply, hardly ever, right? Two points to that. Under the common law, the economic substance doctrine has been presumed to apply to all transactions that generate tax benefits unless Congress has provided otherwise. That's why this court has referred to it in the Cure case as the cardinal principle of the tax code. Professor Bidker in his well-known treatise referred to the longstanding economic substance doctrine as the preamble to the code that applies to all, you know, creates the framework from which all tax benefits are to be understood. And of course now it is part of the code itself since it's been codified in 2010. And so the relevance in any given case, you know, so it's presumed to be potentially relevant in all cases unless Congress provides otherwise. And the relevance in any given case can be determined only after examining, you know, the material and facts and law. And Congress explained this in the codification's history citing the ACM case. That is how relevance has been determined under the common law. And Congress didn't mean to accept, you know, upset that in any way because the doctrine does need to remain flexible. That's a point that this court made in the Blum case and Congress reiterated it in the codification history. Because abuse of tax shelters are always changing. And so it's, you know, not the case that it never applies here or always applies there. Each case is contextual and depends on the facts and circumstances. Are you saying that it's always relevant unless subsection 5B, applying to individuals, applies? That is one of the instances where Congress has said that the economic substance doctrine is not relevant. But there have been others where the disk situation addressed in the Summa Holdings and Benson case. And disks are domestic international sales corporations. Congress wanted to provide a tax benefit for export sailors in economically meaningless transactions as a way to further exports. And in those situations, as in Horne, as in Duane, you know, it's categorically not relevant. As in 77015B, as you pointed out, Judge Murphy. In other instances, you should determine whether it's relevant and applicable in any given case by analyzing the facts and circumstances. It's always been applied that way. And looking to Congress's intent, even if we don't have an expression of that intent? That's where I struggle with this. Sure. Looking at intent is that Congress generally, it's that background norm that Congress generally intends the code provisions to apply to transactions that are economically meaningful. What the economic substance doctrine does is it filters out transactions that don't have any economic meaning. Because the code provisions and regulatory provisions are normally written for economically meaningful transactions. Let me ask you this. It's a hypothetical, although it's reality. Assume the facts in varying medical systems, the tax court case. Why doesn't the economic substance rule apply in that hypothetical? It doesn't apply in what is invoked by the government in that case, because that was just a transaction where it was economically meaningful, and the taxpayer took advantage of a gap in the statute. And the economic substance doctrine is not invoked whenever a taxpayer is claiming a windfall. We've explained in this case, I've used the hypothetical in the front part of our brief, between taxpayer B and taxpayer C. And taxpayer B has regular earnings and profits from business operations and wants to take advantage of the gap in the statute in this case, but doesn't engage in economically meaningless transaction. Economic substance doctrine would not apply there. The economic substance doctrine applies when a taxpayer engages and creates a contrived, economically meaningless transaction to sort of supersize the tax benefit that's derived from the gap. What was the economic substance in variant? I think it was just a regular business transaction where the taxpayer claimed foreign tax credits. And when you claim foreign tax credits, there's like a gross, it's a complicated case. But there wasn't any allegation that anything had been contrived and was economically meaningless to take advantage of the gap. Was it in the context of repatriation of foreign income? I don't recall. It may have been. Help me understand then, under your test, why this isn't the taxpayer taking advantage of a gap and getting a windfall? Why is that not the case? The reason why is because the steps that the taxpayer took on December 26, 2018, the profit certificates, the springing of life debt, those steps lacked economic substance. And Congress did not intend the 245A deduction to apply to economically meaningless transactions. We would not be here today if Liberty Global had not engaged in steps one through three of Project Soy, but just had sold TGH on December 28th and had claimed a dividend received deduction for its real earnings and profits, which I think TGH's real earnings and profits were about $400 million. If it had been satisfied with a limited deduction of the gain in that amount, we wouldn't be here. So why then shouldn't you also ignore step four? Because step four was an economically meaningful stock sale. And in the economic substance doctrine, you disregard the steps that create the disputed tax benefits. Here, step four was an economically meaningful sale. It provides lasting benefits that the government respects for Liberty Global. It no longer has to pay tax on TGH's earnings and profits from 2018 going forward. And as I mentioned before, it is entitled to the limited dividends received deduction triggered by that sale to the extent of TGH's actual earnings and profits from its regular business operations. Do you have any case authority in a multi-step transaction where the economic substance rule applied to some but not all of the steps in the transaction like here? Sure. We rely on Coltec, which this court relied on in the Sala decision. In that case, it was a multi-step transaction where the taxpayer tried to generate high basis low value stock through a 351 organization that it could later sell for a large loss. And the court analyzed the steps that generate the high basis, which was the exchange of contingent liabilities for a note, disregarded that which reduced the basis, but respected the stock sale, which was legitimate to allow the taxpayer the limited loss once the basis was reduced. Were there real earnings and profits here? Real? E&P. Yes, they had about 400 million in real earnings and profits from their business operations TGH. But the artificial earnings and profits generated by the steps one through three of Project Soy, that just came about. You call them artificial. Were they real? Non-economic. They were generated by mechanical operation of the tax rules. So it wasn't the earnings and profits were not the result of sales of products or services or capital gains? No, not at all. And in fact, if this had provided real economic gain for TGH, Liberty Global wouldn't have conceded the first prong of the economic substance test, that this transaction had absolutely no economic effect. Unless the court has any further questions, we ask that you affirm the district court's decision, and we rest our brief. Thank you, counsel. Appreciate your arguments today. They've been very helpful. The case will be submitted and counsel excused. Thank you.